IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CHARLES PETERSON,

    Plaintiff,                       No. CIV S-09-3267 JAM CKD P

    vs.

GORE,

    Defendant.                FINDINGS & RECOMMENDATIONS

_____/

        Plaintiff, a state prisoner[1] proceeding pro se, has filed a civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on the original complaint, filed November 23, 2009. (Dkt. No. 1.) On May 19, 2010, the previously assigned magistrate judge ruled that the complaint stated a cognizable Eighth Amendment claim as to defendant Gore. (Dkt. No. 10.) Pending before the court is defendant's October 21, 2011 motion to dismiss the complaint for failure to exhaust administrative remedies. (Dkt. No. 39.) Plaintiff filed an opposition to the motion, defendant filed a reply, and plaintiff filed a sur-reply. (Dkt. Nos. 43, 44, 45.) For the

---

[1] Plaintiff was earlier released from Avenal State Prison, as confirmed by his Notice of Change of Address on May 19, 2010. (Dkt. No. 13.) However, defense counsel recently noted that plaintiff has returned to Avenal State Prison. (Dkt. No. 44 at 3, n.2.) The court has confirmed this and revised plaintiff's address on the docket of this action to reflect that he is currently housed at Avenal.

1

reasons discussed below, the undersigned will recommend that defendant's motion be denied.

I. Motion to Dismiss

In the complaint, plaintiff alleges that defendant Gore used excessive force against him in violation of the Eighth Amendment on March 18, 2009, while plaintiff was on a bus awaiting transport to Avenal State Prison.[2] Plaintiff alleges that Gore "roughly cuffed" his left ankle, causing him to "fall forward and become wedged between the bus seat and window." Gore allegedly grabbed plaintiff's waist chain to pull him up, while plaintiff "screamed in pain" and informed Gore that he was "disable[d] from spinal surgery[.]" Plaintiff fell to the bus floor and Gore allegedly continued to try to pick him up by the waist chain, "thus bend[ing] my spine," until plaintiff "felt a click and my whole body went numb." (Dkt. No. 1 at 3.)

In his complaint, plaintiff indicated that he had exhausted administrative remedies. He stated that his first appeal was stamped "emergency" and then stamped "bypass all levels." He further stated that after he submitted the appeal to Sacramento, it was sent back to him with the instruction that he go through all the levels again. (Id. at 2.) Plaintiff's description of how CDCR responded to his grievance is clarified by declarations and records attached to defendant's motion to dismiss.

First, a declaration by D. Foston, Chief of the Office of Appeals (OOA) for CDCR, provides a general overview of the administrative grievance process:

> CDCR has a comprehensive administrative appeals system for prisoner complaints, described in Title 15 of the California Code of Regulations, section 3084, et seq. . . . Before January 28, 2011, the CDCR's inmate appeals process had several levels of appeal: (1) informal resolution; (2) first formal appeal; (3) second formal appeal; (4) third level appeal to the Chief of the Inmate Appeals Branch to the Office of Appeals (OOA). . . .
>
> Final review and decision by the (OOA), also known as 'Third Level' appeal, concludes the inmate's administrative remedy

---

[2] Plaintiff alleges that he was boarding the bus "at Folsom State Prison via High Desert State Prison in route to Avenal State Prison." (Id.) Defendant Gore was employed by High Desert State Prison. (Dkt. No. 39-2 at 3.)

        process, for all non-medical appeals.  The Office of Third Level
Medical Appeals-Health Care (OTLA-HC), started receiving and
reviewing medical appeals in August 2008.  In November of 2008,
OTLA-HC started receiving and reviewing medical staff
complaints.

(Dkt. No. 39-3 at 1-2.)

        Here, plaintiff submitted an inmate appeal for First Level Review at Avenal State Prison in March 2009.  In fact, it appears that plaintiff submitted two appeals at this level: one dated March 18, 2009 and another dated March 22, 2009.  As both have a stamped "received" date of March 25, 2009, the court assumes they were treated as one appeal.  (Dkt. No. 39-2 at 8-9.)  In the March 18 appeal, plaintiff stated that he had been physically injured by Gore during transport from HDSP and was "hurt badly" and in "severe pain."  He requested "medical attention ASAP."  In the March 22 appeal, plaintiff added that he had a "spine injury and the pain is unbearable and both sides of my body is numb and it is hard for me to stand-sit-walk.  I was subject to more pain by being shackled and put in a upright sitting position for 8 hours in a cage when 911 should've been called.  It's been 4 days and I've still not had emergency care."  He requested X-rays, an MRI, and "damage assessment."  (Id.)  Both of these appeals were stamped "BYPASS" at the informal and formal levels, and the March 22 appeal was also stamped "EMERGENCY."  (Id. )  An internal record tracking the appeal and dated March 27, 2009 indicated that the appeal was "referred to Health Care."  (Dkt. No. 39-2 at 10.)

        In a declaration filed in support of defendant's motion, N. Lopez, an appeals supervisor at Avenal, states:

        On March 27, 2009, the Appeals Office at ASP received an appeal from Peterson regarding [the alleged events of March 18, 2009.]  The appeal was bypassed at the First Level and forwarded to Health Care Services for review at the Second Level because Peterson alleged spinal injuries.  On April 8, 2009, the appeal was cancelled at the Second Level because the allegations involved a staff member employed by another institution, High Desert State Prison.  Plaintiff was advised that he would need to send his appeal to High Desert State Prison, where the involved staff person was employed.

(Dkt. 39-2 at 3.)  Lopez signed the April 8, 2009 notification letter to plaintiff stating that his

3

appeal documents were being returned to him because "the action . . . you are appealing was not taken by Avenal State Prison. . . . ASP Appeals Coordinator has cancelled this appeal due to the staff member being from another institution. You will be required to send this appeal to HDSP." The letter did not cite any regulation or rule as the basis for screening out the appeal. Moreover, nothing in the letter reflected that plaintiff's appeal was originally deemed an "emergency" appeal that raised medical issues. (Dkt. No. 39-2 at 7.)

There is no record that plaintiff re-filed his grievance at HDSP. (Dkt. 39-1 (H. Wagner Decl. ¶ 9).) Instead, plaintiff submitted his appeal to the Chief of the Inmate Appeals Branch for Third Level review on June 24, 2009. (Dkt. No. 39-3 (D. Foston Decl. ¶ 10).) "However, the appeal was screened out at the Third Level of review on July 9, 2009 because plaintiff failed to exhaust administrative procedures at the lower levels." (Id.) An attached record indicates that plaintiff's third-level appeal was received on June 24, 2009 and screened out on July 9, 2009 because second-level review was not complete. (Dkt. No. 39-3 at 6 (D. Foston Decl, Ex. A).)

Defendant also notes that there is no record that plaintiff ever submitted his appeal to the Office of Third Level Medical Appeals-Health Care. (Dkt. No. 44 at 2; see Dkt. No. 40 (Zamora Decl.).) However, as plaintiff did submit a third-level appeal which was screened out for failure to complete second-level review, there is no reason to believe that his submission of a third-level health care appeal would have fared any better.

In his opposition to the motion to dismiss, plaintiff states that he has "done the best I could to show I indeed have followed the administrative guide lines, my administrative document have been stamped 'Emergency' medical attention[.]" (Dkt. No. 43 at 1-2.) In his sur-reply, plaintiff further asserts that his attempts to use the grievance process were "met with some form of retaliation" or "blocked." He asserts that "the only choice I was left[] with was to file directly to the administrators who can assure that my attempts to exhaust all the administrative remedies were not blocked[.]" (Dkt. No. 45 at 1-2.)

4

In reply, defendant asserts that plaintiff "never corrected the deficiencies in his appeal, and he never had his appeal reviewed at the Third Level." Because plaintiff "did not follow all steps of the inmate appeals process," defendant argues, his claim should be dismissed for failure to exhaust administrative remedies. (Dkt. No. 44 at 2-3.)

II. Exhaustion of Administrative Remedies

A. Legal Standard

The Prison Litigation Reform Act ("PLRA") provides that, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Pursuant to this rule, prisoners must exhaust their administrative remedies regardless of the relief they seek, i.e., whether injunctive relief or money damages, even though the latter is unavailable pursuant to the administrative grievance process. Booth v. Churner, 532 U.S. 731, 741 (2001). Exhaustion also requires that the prisoner complete the administrative review process in accordance with all applicable procedural rules. Woodford v. Ngo, 548 U.S. 81 (2006).

The PLRA requires that administrative remedies be exhausted prior to filing suit. McKinney v. Carey, 311 F.3d 1198 (9th Cir. 2002). However, the exhaustion requirement is not jurisdictional, but an affirmative defense that may be raised by a defendant in a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b). See Jones v. Bock, 549 U.S. 199, 216 (2007) ("inmates are not required to specially plead or demonstrate exhaustion in their complaints"); Wyatt v. Terhune, 315 F.3d 1108, 1117–19 (9th Cir. 2003) (failure to exhaust is an affirmative defense). Defendants bear the burden of raising and proving the absence of exhaustion, and their failure to do so waives the defense. Id. at 1119.

"In deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact." Wyatt, 315 F.3d at 1119. "I[f] the district court looks beyond the pleadings to a factual record in deciding the motion

to dismiss for failure to exhaust – a procedure closely analogous to summary judgment – then the court must assure that [the prisoner] has fair notice of his opportunity to develop a record." Id. at 1120 n.14.  When the district court concludes that the prisoner has not exhausted administrative remedies on a claim, "the proper remedy is dismissal of the claim without prejudice." Id. at 1120; see also Lira v. Herrera, 427 F.3d 1164, 1170 (9th Cir. 2005) ("mixed" complaints may proceed on exhausted claims).  Thus, "if a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad." Jones, 549 U.S. at 221.

"The level of detail in an administrative grievance necessary to properly exhaust a claim is determined by the prison's applicable grievance procedures." Jones, supra, 549 U.S. at 218.  In California, prisoners are required to lodge their administrative complaint on a CDC Form 602, which requires only that the prisoner "describe the problem and action requested." Cal. Code Regs. tit. 15, § 3084.2(a).  In Griffin v. Arpaio, 557 F.3d 1117 (9th Cir. 2009), the Ninth Circuit Court of Appeals adopted the standard enunciated by the Seventh Circuit, which provides that "when a prison's grievance procedures are silent or incomplete as to factual specificity, 'a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought.'" Griffin, 557 F.3d at 1120 (reviewing Arizona procedures), quoting Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002).  Thus, in California, "[a] grievance need not include legal terminology or legal theories unless they are in some way needed to provide notice of the harm being grieved.  A grievance also need not contain every fact necessary to prove each element of an eventual legal claim.  The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation." Griffin, 557 F.3d at 1120; accord, Morton v. Hall, 599 F.3d 942, 946 (9th Cir. 2010).

"[E]xhaustion is not per se inadequate simply because an individual later sued was not named in the grievances." Jones, 549 U.S. at 219.  It is nonetheless appropriate to require that a prisoner demonstrate, through the administrative grievance process and consistent with the PLRA, that he has standing to pursue his claims against a particular defendant.  "[A]t an

irreducible minimum, Art[icle] III [of the United States Constitution] requires the party who invokes the court's authority to 'show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant.'" Valley Forge Christian College v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 472 (1982).

B. Discussion

There is no dispute that, after his appeal was screened out at the second level of review, plaintiff failed to "send his appeal to High Desert State Prison" as instructed. Plaintiff instead filed a third-level appeal, which was rejected because second-level review was not complete. Thus defendant has carried his burden to show that plaintiff failed to exhaust administrative remedies as to his excessive force claim.

However, the Ninth Circuit has held that an inmate's failure to exhaust administrative remedies may be excused where "circumstances render administrative remedies effectively unavailable." Nunez v. Duncan, 591 F.3d 1217, 1226 (9th Cir. 2010) (holding that inmate's failure to exhaust his administrative remedies was excused because he took reasonable steps to exhaust his claim and was precluded from exhausting, not through his own fault but by the Warden's mistake).

The Ninth Circuit also excused an inmate's failure to exhaust administrative remedies in Sapp v. Kimbrell, 623 F.3d 813 (9th Cir. 2010). In that case the court held that improper screening of inmates' grievances renders administrative remedies effectively unavailable, thereby excusing inmates from complying with the PLRA's exhaustion requirement. Id. at 823. "If prison officials screen out an inmate's appeals for improper reasons, the inmate cannot pursue the necessary sequence of appeals, and administrative remedies are therefore plainly unavailable." Id. "To fall within this exception, a prisoner must show that he attempted to exhaust his administrative remedies but was thwarted by improper screening. In particular, the inmate must establish (1) that he actually filed a grievance or grievances that, if pursued through all levels of administrative appeals, would have sufficed to exhaust the claim that he seeks to

pursue in federal court, and (2) that prison officials screened his grievance or grievances for reasons inconsistent with or unsupported by applicable regulations." Id. at 823-24.

Here, the grievances filed by plaintiff in March 2009, if pursued through all levels of administrative appeals, would have sufficed to exhaust his claim against defendant Gore. Thus the question is whether prison officials screened out his grievance at the second level for "reasons inconsistent or unsupported by applicable regulations."

In his March 2009 appeals, plaintiff alleged spinal injury and ongoing debilitating pain. It is plain from the face of the appeal that this was initially assessed as an "emergency" appeal such that the first two levels of administrative review were bypassed. Title 15 of the California Code of Regulations (CCR), section 3084.9(a)(1) provides:

> When circumstances are such that the regular appeal time limits would subject the inmate or parolee to a substantial risk of personal injury or cause other serious and irreparable harm, the appeal shall be processed as an emergency appeal. Emergency circumstances include, but are not limited to:
>
> (A) Threat of death or injury due to enemies or other placement concerns.
>
> (B) Serious and imminent threat to health or safety.

Section 3084.9(a)(4) further provides: "If emergency processing is warranted, the first level shall be waived and the second level review shall be completed within five working days."

In this case, at the second level of review, plaintiff's emergency appeal was not processed within five days, but cancelled altogether. Under state regulations, "[w]hen an appeal is received as an emergency appeal that does not meet the criteria for emergency appeal as defined in subsection 3084.9(a), the appellant shall be notified that the appeal does not meet the criteria for processing as an emergency appeal and has been either accepted for regular processing or is rejected for the specific reasons cited." 15 CCR § 3084.5(a)(2). Here, plaintiff's appeal clearly did meet the "emergency" standard and was not cancelled for that reason.

\\\\\

Rather, N. Lopez at the second level of review construed the appeal as a "staff complaint" governed by 15 CCR section 3084.9(I). (Compare § 3084.9(a), governing emergency appeals.) Despite the fact that plaintiff's appeal alleged serious physical injury and ongoing severe pain, was stamped "EMERGENCY," and the first two levels of review had been bypassed for expedited processing, Lopez simply screened out the appeal and told plaintiff to start the process over at HDSP. (It bears noting that, as plaintiff was not housed at HDSP, any medical care required for his claimed injuries would have been arranged by officials at Avenal, not HDSP.) Under these circumstances, and taking the facts in the light most favorable to the non-moving party, the undersigned concludes that plaintiff was excused from exhausting administrative remedies because his appeal was screened out at the second level for "reasons inconsistent or unsupported by applicable regulations." Sapp, 623 F.3d at 823-824.

III. Conclusion

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendant's October 21, 2011 motion to dismiss for failure to exhaust administrative remedies (Dkt. No. 39) be denied; and

2. Defendant be ordered to file an answer to the complaint no later than 30 days after these findings and recommendations are adopted by the district judge, if they are adopted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections

////
////
////
////

shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: May 11, 2012

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2 / pete3267.mtd