UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES PETERSON,<br><br>            Plaintiff,<br><br>     v.<br><br>GORE, et al.,<br><br>            Defendants. | No.  2:09-cv-3267 JAM CKD P<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is a former[1] state prisoner proceeding pro se.  Plaintiff filed a complaint for damages under 42 U.S.C. § 1983 alleging violations of his constitutional rights during his transport to Avenal State Prison, and this action proceeds on his original complaint.  (ECF No. 1.) Specifically, plaintiff alleges that California Department of Corrections and Rehabilitation ("CDCR") officials ankle-cuffed him, causing him to fall, and then used excessive force while picking him up, ignoring plaintiff's spinal injury, on a bus ride to Avenal State Prison.  (ECF No. 1.)

The court screened plaintiff's complaint pursuant to 28 U.S.C. § 1915A and recognized a cognizable § 1983 claim for excessive force in violation of the Eighth Amendment against

---

[1] Plaintiff was released from Avenal State Prison after this lawsuit was filed.  (See Decl. Charles Peterson ¶ 2, ECF No. 62, at 20.)

1

defendant Gore. (ECF No. 10.) The other claims against the other defendants were screened out. (Id.) Defendant Gore now moves for summary judgment on plaintiff's excessive force claim, arguing there is no genuine dispute of material fact, and alternatively, that defendant is entitled to immunity. (ECF No. 56.) Plaintiff has filed an opposition, (ECF No. 62), and defendant a reply, (ECF No. 63). For the reasons discussed below, the undersigned will recommend that defendant's motion for summary judgment be granted.

I. Legal Standards

   A. Summary Judgment

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials...." Fed. R. Civ. P. 56(c)(1)(A).

Summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of their pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists or show that the materials cited by the movant do not establish the absence of a genuine dispute. See Fed.

1  R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the

2  fact in contention is material, i.e., a fact that might affect the outcome of the suit under the

3  governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv.,

4  Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is

5  genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving

6  party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

7       In the endeavor to establish the existence of a factual dispute, the opposing party need not

8  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

9  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

10 trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

11 the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

12 Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

13 amendments).

14      In resolving the summary judgment motion, the evidence of the opposing party is to be

15 believed.  See Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the

16 facts placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475

17 U.S. at 587.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

18 obligation to produce a factual predicate from which the inference may be drawn.  See Richards

19 v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902

20 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than

21 simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record

22 taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

23 'genuine issue for trial.'"  Matsushita, 475 U.S. at 586-87 (citations omitted).

24   B.  Applicable Eighth Amendment Standard

25      The Eighth Amendment prohibits "cruel and unusual punishments."  U.S. CONST. amend.

26 VIII.  "[O]nly the 'unnecessary and wanton infliction of pain' constitutes cruel and unusual

27 punishment forbidden by the Eighth Amendment."  Whitley v. Albers, 475 U.S. 312, 319 (1986)

28 (internal alteration and quotation marks omitted).  "When prison officials use excessive force

against prisoners, they violate the inmates' Eighth Amendment right to be free from cruel and unusual punishment." Clement v. Gomez, 298 F.3d 898, 903 (9th Cir. 2002). However, force is not unconstitutionally "excessive" unless the prison official applied force "maliciously and sadistically for the very purpose of causing harm," Whitley, 475 U.S. at 320-21, and "[t]he Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from recognition *de minimis* uses of physical force, provided that the use of force is not repugnant to the conscience of mankind." Wilkins v. Gaddy, 559 U.S. 34, 37-38 (2010) (per curiam) (quoting Hudson v. McMillian, 503 U.S. 1, 9 (1992)).

Accordingly, the Eighth Amendment excessive force "standard necessarily involves a more culpable mental state than that required for excessive force claims arising under the Fourth Amendment's unreasonable seizures restriction." Clement, 298 F.3d at 903. This heightened standard applies because, "in making and carrying out decisions involving the use of force" with respect to prisoners, "prison officials undoubtedly must take into account the very real threats . . . unrest presents to inmates and prison officials alike," and courts should be "hesitan[t] to critique in hindsight decisions necessarily made in haste, under pressure, and frequently without the luxury of a second chance." Whitley, 475 U.S. at 320.

C. Qualified Immunity

"Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments . . . . When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2085 (2011) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). In deciding whether a government official is entitled to qualified immunity, the Supreme Court has articulated a two-prong approach: first, whether the officer's conduct violated a constitutional right; and second, whether the officer's conduct violated "clearly established law." Pearson v. Callahan, 555 U.S. 223, 232, 243-44 (2009) ("The principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law."). "[J]udges of the district courts . . . [are] permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." Id. at 236.

In the excessive force context, the Ninth Circuit has clarified that "the qualified immunity inquiry is separate from the constitutional inquiry." Marquez v. Gutierrez, 322 F.3d 689, 693 (9th Cir. 2003) ("Courts may not simply stop with a determination that a triable issue of fact exists as to whether prison officials acted unconstitutionally; instead, the qualified immunity inquiry is separate . . . ." (alteration omitted) (quoting Estate of Ford v. Ramirez–Palmer, 301 F.3d 1043, 1053 (2003))). A defendant official is entitled to qualified immunity if, "viewing the situation as a reasonable officer" in defendant's position, "a reasonable officer could have believed" that the use of force was lawful as a "good faith effort to maintain or restore discipline." Id. at 692-93.[2]

III. Factual Background

This case arises from the alleged use of excessive force in transporting plaintiff by bus from High Desert State Prison ("High Desert") to Avenal State Prison. Initially, plaintiff was imprisoned at High Desert, and plaintiff's transport bus departed March 17, 2009. The bus ride included an overnight stop at California State Prison Solano ("CSP-Solano"), and the bus arrived at Avenal State Prison on March 18, 2009. The incident *sub judice* occurred on March 18, 2009, while plaintiff was boarding the bus from CSP-Solano to Avenal State Prison. Defendant Gore was employed as a correctional officer with CDCR in the Transportation Unit, and was working on the bus that day.

The parties' accounts of this incident diverge. Plaintiff supports his excessive force allegations with his declaration, (ECF No. 62, at 20), and his various staff complaints that he apparently filed beginning March 18, 2009, (ECF No. 62, at 26). Defendant supports his motion for summary judgment with various documents including declarations from witnesses, excerpts from plaintiff's deposition testimony, and declarations from prison medical staff. (ECF No. 56-1, at 1.) Each party's evidence is discussed in detail separately below.

///

---

[2] The Ninth Circuit has held that the right to be free from cruel and unusual punishment by excessive force is clearly established law for purposes of qualified immunity analysis. Furnace v. Sullivan, 705 F.3d 1021, 1027-28 (9th Cir. 2013) ("[T]he 'settled rule is that the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment.'" (internal alterations omitted) (quoting Hudson, 503 U.S. at 5)).

A. Plaintiff's Allegations and Evidence

In his original complaint, plaintiff avers that while he was "boarding CDC transportation . . . in route to Avenal State Prison" on March 18, 2009, he was "ankle cuffed by officer Gore" in such a "rough[]" manner" that "a shock wave" traveled through his "whole body." (Compl. ECF No. 1, at 3.) "The shock caused [plaintiff] to fall forward and become wedged between the bus seat and window." (Id.) "Officer Gore then grabbed [plaintiff's] waist chain to pull" him up from between the seat and window, while plaintiff "screamed in pain," he "inform[ed] officer Gore [he was physically] disabled[d] from spinal surgery." (Id.) As Officer Gore pulled plaintiff up, plaintiff "felt a click and [his] whole body went numb." (Id.)

The above version of events contained in the complaint appears consistent with plaintiff's declaration that he attached to his opposition to defendant's motion for summary judgment. (See ECF No. 62, at 20-25.) Moreover, in his declaration, plaintiff also declares, "The bus was full of inmates," who "fill[ed] the back of the bus." (Id. at 21.) Plaintiff also claims he was injured by this incident: "I had no major back problems prior to the injury [inflicted] by Gore," and that now, "the extent of [plaintiff's] injury [is] for life, [and] cannot be repaired." (Id. at 41, 36.)

Plaintiff also attached an "Inmate/Parolee Appeal Form," containing a consistent description of the incident and further expressing plaintiff's fear of "reprisals" and belief that he was "hurt badly," apparently filed on March 18, 2009, and stamped "received" on March 25, 2009. (ECF No. 62, at 26.)

Finally, plaintiff's declaration contains several conclusory statements about defendant's "intent," (Decl. Peterson ¶17, ECF No. 62, at 24), and also about the intimidation felt by other inmates regarding defendant to perhaps explain why there is no corroborating testimony from other inmate witnesses in the summary judgment record, (id. ¶ 15). Defendant objects to the admissibility of these statements, arguing these statements lack personal knowledge or foundation and are therefore inadmissible under Federal Rule of Evidence 602. (ECF No. 64.) Since plaintiff's declaration does not contain "evidence . . . sufficient to support a finding that the witness has personal knowledge" of other inmates' feelings of intimidation or defendant Gore's state of mind, Fed. R. Evid. 602, defendant's objection is SUSTAINED, and these statements will

6

not be considered as evidence in deciding the pending motion.

B. Defendant's Proffered Evidence

Defendant attached to his motion for summary judgment declarations from CDCR officers who were on the bus, excerpts from plaintiff's deposition, and declarations from CDCR medical staff. (App'x of Ev. in Supp. of Def.'s Mot. Summ. J. ("Def.'s App'x"), ECF No. 56-1.) Moreover, defendant supported his motion for summary judgment with a separate statement of undisputed facts. (Separate Statement of Undisputed Facts, in Supp. of Def. Gore's Mot. Summ. J. ("SSUF"), ECF No. 57-2.) See also Beard v. Banks, 548 U.S. 521, 527-28 (2006) (holding that a prisoner plaintiff in a § 1983 action, "by failing specifically to challenge the facts identified in the defendant's statement of undisputed facts, [was] deemed to have admitted the validity of the facts contained in the [defendant's] statement.").

Defendant's declaration together with the declarations of the other CDCR officers on the bus that day contradict plaintiff's version of events. Defendant Gore declares, "[t]o the best of [his] recollection," that he "did not speak to plaintiff," let alone "have any physical contact or use any force on plaintiff on March 18, 2009." (Def.'s App'x, Ex. C, Decl. K. Gore ¶¶ 5, 7, ECF No. 56-1, at 18.) Sergeant K. Blake was the Correctional Sergeant on the bus on March 18, 2009, (Def.'s App'x, Ex. D, Decl. K. Blake ¶ 4, ECF No. 56-1, at 21), and he declares that he "did not witness Officer Gore use any force on plaintiff Charles Peterson on March 18, 2009 . . . ." (Id. ¶ 5.) Officer Blake was also on the bus, and he likewise declares that he "never witnessed Officer Gore use any force on plaintiff Charles Peterson on March 18, 2009 . . . ." (Def.'s App'x, Ex. E, Decl. K. Brown ¶ 6, ECF No. 56-1, at 25.)

Defendant's statement of undisputed facts describes CDCR procedures for handling and documenting a medical emergency or an incident where force was used during transport, and these facts are "deemed admitted" because they are not "challenge[d]" by plaintiff's opposition. Beard, 548 U.S. at 527. In the event of a medical emergency during a transport, transportation officers call for emergency assistance. (SSUF ¶ 15, ECF No. 56-2.) Moreover, if there is an incident where force is used or a medical emergency during transport, "one of the officers . . . document[s] the incident by generating a CDC Form 837 Incident Report, or a CDC Form 128

7

chrono." (Id. ¶¶ 15-16.) However, no such reports of any medical emergency or use of force were generated regarding plaintiff's transport on March 18, 2009. (Id.)

Moreover, defendant's statement of undisputed facts includes facts deemed admitted, Beard, 548 U.S. at 527, regarding plaintiff's physical condition before and after March 18, 2009. For example, at plaintiff's deposition, he testified that he had fusion back surgery at age 14 for scoliosis. (SSUF ¶ 3, ECF No. 56-2; Def.'s App'x, Ex. A, Dep. Charles Peterson 73:11-16, ECF No. 56-1, at 12.) Before and during his transport, plaintiff "did not have any ambulatory devise," e.g., a cane or walker, that might inform an officer of his disability. (SSUF ¶ 4, ECF No. 56-2.) A month after his transport, "April 24, 2009, plaintiff had x-rays done. There were signs of moderate disk disease and degenerative spondylosis," (SSUF ¶ 22, ECF No. 56-2), but there was "no indication of fracture or mass." (Id. (citing Def.'s App'x, Ex. F, ECF No. 56-1, at 28).) Plaintiff's follow-up x-ray exam detected the same degenerative conditions detected in the first exam, but was "[o]therwise unremarkable." (Def.'s App'x, Ex. G, ECF No. 56-1, at 31; SSUF ¶ 23, ECF No. 56-2.)

Finally, defendant declares that he "never had any problems" with plaintiff, and "never intended to harm or injure plaintiff on March 18, 2009." (Decl. Gore ¶¶ 13-14, ECF No. 56-1, at 19.) Further, defendant declares "California Code of Regulations, title 15, section 3391 requires staff to exhibit courteous and professional conduct, and [defendant] could have been disciplined for treating plaintiff as he alleges in his complaint." (Id. ¶ 15.) Defendant declares: "There is simply no incentive for me to risk my career in order to harm plaintiff." (Id.) Defendant's statement of undisputed facts include facts deemed admitted, Beard, 548 U.S. at 527, that establish "Officer Gore," a transport officer, "did not have access to any inmates central files. Accordingly, he did not possess documents pertaining to plaintiff's alleged disability or commitment offense." (SSUF ¶ 21, ECF No. 56-2.)

IV. Analysis

Plaintiff asserts an excessive force claim (A) against defendant individually for damages under § 1983, (B) against defendant in his official capacity for damages under § 1983, and (C) against defendant for injunctive relief. Defendant moves for summary judgment arguing

(A) there is no genuine dispute of material fact on plaintiff's excessive force damages claim against defendant individually, and, even so, defendant is entitled to qualified immunity, (B) defendant is entitled to sovereign immunity for plaintiff's damages claim against defendant in his official capacity, and (C) plaintiff—who is no longer incarcerated—cannot show a continuing likelihood of immediate irreparable injury sufficient to warrant prospective injunctive relief. For the reasons stated below, the undersigned will recommend that defendant's motion for summary judgment be granted.

A.   Excessive Force Claim for Damages Against Defendant Individually

Defendant moves for summary judgment on plaintiff's excessive force claim arguing *inter alia* that plaintiff's allegations and evidence "do not rise to the level of excessive force under the Eighth Amendment," because "Officer Gore used minimal amount of physical contact to secure plaintiff for transport," and he had "no reason . . . to know that plaintiff had serious back problems." (Def.'s Not. of Mot. & Mot. Summ. J.; Mem. P. & A. in Supp. ("Mot. Summ. J.") 6:21-22, 7:1-7, ECF No. 56.)[3] Further, defendant contends "there is no evidence that plaintiff suffered injuries to his ankle or back," and that plaintiff has not "set forth facts demonstrating that the alleged use of force by Officer Gore was malicious and sadistic and for the very purpose of causing harm." (Id. at 7:8-9, 9:22-26.) Moreover, even if defendant's force was excessive, defendant argues he "is entitled to qualified immunity for his actions because a reasonable officer in his position would believe his actions were lawful and would not have been on notice that his conduct was unlawful." (Id. at 8:27-9:2.)

Plaintiff counters arguing he "told" defendant that he was "disable[d] and could not assume the position" to be ankle cuffed "without his help." (Pl.'s Opp'n to Def.'s Mot. Summ. J. ("Opp'n") 3, ECF No. 62, at 8.) Plaintiff contends "it[']s extremely obvious something happen[ed] on the bus," because of "the legal paper trial [that] started on March 18th 2009," and

---

[3] Defendant also argues "Officer Gore did not use force . . . on plaintiff and therefore[] did not subject plaintiff to 'unnecessary and wanton infliction of pain.'" (Mot. Summ. J. 5:22-25.) However, for "summary judgment purposes, [the court] will assume" plaintiff's version of events, supported by his declaration and attached evidence. Clement, 298 F.3d at 902 (noting that the "parties' recollections differ with respect to the duration of" pepper spray bursts, and assuming plaintiff's version—"two bursts, each lasting up to five seconds"—on summary judgment).

because plaintiff has "gone above and beyond to prove this injury . . . did indeed occur." (Id. at 4, ECF No. 62, at 9.) Moreover, plaintiff argues generally defendant intimidated witnesses from testifying "out of fear of retaliation," contending "Gore is hiding something." (Id. at 8, ECF No. 62, at 13.) Lastly, plaintiff argues defendant intended to harm him because of his status as "a sex offender," which defendant would have inferred from plaintiff's assignment "to the caged seat" on the bus. (Id. at 11, ECF No. 62, 16.)

In evaluating an excessive force claim under the Eighth Amendment, the "'core judicial inquiry'" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins v. Gaddy, 559 U.S. 34, 37 (2010). The Supreme Court has identified five factors, i.e., Hudson factors, to be considered in determining whether force was applied "maliciously and sadistically for the very purpose of causing harm," Whitley v. Albers, 475 U.S. 312, 320-21 (1986):

    (1) the extent of injury suffered by an inmate;

    (2) the need for application of force;

    (3) the relationship between that need and the amount of force used;

    (4) the threat reasonably perceived by the responsible officials; and

    (5) any efforts made to temper the severity of a forceful response.

Furnace v. Sullivan, 705 F.3d 1021, 1028 (9th Cir. 2013) (internal quotation marks omitted) (citing Hudson, 503 U.S. at 6).

The Ninth Circuit's decision in Clement v. Gomez, 298 F.3d 898 (9th Cir. 2002) illustrates the "malicious and sadistic" standard. In Clement, correctional officers administered pepper spray to quell a disturbance within a prison cell at Pelican Bay State Prison. One officer administered a five-second burst of pepper spray into the cell, at which point neighboring inmates reported that "the fighting sounds were replaced by sounds of coughing and gagging after the initial burst of pepper spray." Id. at 901-02 (footnote omitted). The issue on summary judgment was whether the "second application" of pepper spray for five seconds "after the inmates had begun coughing and gagging but before they had [been] [hand]cuffed" constituted excessive force. Id. at 902. The district court found that the plaintiff's evidence created a genuine dispute

1  of material fact, and denied defendants' motion for summary judgment, id. at 901; however, the
2  Ninth Circuit reversed, id. at 904. The court reasoned that, even assuming that the "final spray
3  was dispensed after the sounds of coughing and gagging were heard from the cell, this allegation
4  alone does not lead to the inference that the official used the pepper spray 'maliciously and
5  sadistically for the very purpose of causing harm.'" Id.

6  Likewise, in Dukes v. Lizaola, a case with facts similar to the record in this case, a federal
7  district court granted the prison-official defendants summary judgment applying the Hudson
8  factors, and summary judgment was affirmed on appeal by the Ninth Circuit. No. C 10-0864
9  CRB (PR), ECF No. 46 (N.D. Cal. July 22, 2011) (Breyer, J.), aff'd 486 F. App'x 642 (9th Cir.
10 2012) (unpublished). In Dukes, the inmate plaintiff Dukes had a preexisting injury to his
11 shoulder, having recently undergone shoulder surgery, and "was issued a temporary
12 comprehensive accommodation chrono ('chrono') ordering that his arm not be cuffed [behind
13 him]." Id. at *2 (footnote omitted). Nonetheless, in response to a prison fight involving him,
14 Dukes was handcuffed by a defendant behind his back over Dukes' protestation "that he had a
15 chrono mandating that he only be handcuffed in the front." Id. at *2-*3. Dukes sued alleging
16 defendants violated his Eighth Amendment rights by handcuffing him behind his back in spite of
17 his shoulder injury which he claimed caused him great pain, and the district court granted
18 summary judgment for defendants finding no genuine dispute of material fact and holding
19 defendants were entitled to qualified immunity. Id. at *6. The court reasoned there was "no
20 indication that the amount of force used was disproportionate . . . or that Dukes sustained
21 significant injuries . . . . Under the circumstances, no reasonable juror could find that defendants
22 sadistically and maliciously handcuffed Duke behind his back for the purpose of causing harm."
23 Id. at *7; accord Dukes, 486 F. App'x at 642 ("The district court properly granted summary
24 judgment on Dukes' handcuffing claim because Dukes failed to raise a genuine dispute of
25 material fact as to whether defendants acted 'maliciously and sadistically for the very purpose of
26 causing harm' by handcuffing Dukes behind his back . . . ." (quoting Clement, 298 F.3d at 903)).
27 Here, as in Dukes and Clement, plaintiff has proffered insufficient evidence from which a
28 reasonable juror could infer defendant Gore applied force in ankle-cuffing and picking up

11

plaintiff "maliciously and sadistically for the very purpose of causing harm." Whitley, 475 U.S. at 320-21. First, there is no evidence that plaintiff suffered significant injuries. See Hudson, 503 U.S. at 7 ("[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force . . . evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur.'"). On the contrary, defendant's uncontradicted evidence shows that plaintiff's x-ray exams after the incident did not reveal any injury, (SSUF ¶ 22, ECF No. 56-2), aside from the degenerative conditions plaintiff suffered from before March 18, 2009. (Id.)

Further, considering together the need for force, the threat perceived by a reasonable official, and the relationship between the need for force and the force actually used, see Furnace, 705 F.3d at 1028, the undersigned finds that a reasonable juror would conclude "force was applied in a good-faith effort to maintain or restore discipline." Wilkins, 559 U.S. at 37. The court notes the dangers inherent in transporting prisoners "when the prisoners are being transported outside the prison confines." Spain v. Procunier, 600 F.2d 189, 197-98 (1979) (holding "that use of mechanical restraints such as leg manacles or waist chains, in addition to handcuffs," is not unconstitutionally excessive). As the Ninth Circuit reasoned in Spain:

> [T]he dangers presented when the prisoner travels outside the prison are significant. The closed environment of a prison permits monitoring of most activities of the prisoners and those with whom they are in close contact. This same degree of control is simply not possible beyond penitentiary walls. The movement of prisoners outside the prison inherently presents a serious threat to their guards and the population at large.

Id. at 198. Assuming the facts as alleged by plaintiff, the only force defendant applied in this dangerous context was the force he used in "ankle cuff[ing]" plaintiff in a "rough[]" manner, (Compl. ECF No. 1, at 3,) and "grabb[ing] [plaintiff's] waist chain to pull" him up from between the seat and window of the bus, (id.). Moreover, the undisputed facts establish that defendant "did not possess documents pertaining to plaintiff's alleged disability or commitment offense," such that, as in Dukes, defendant did not know about plaintiff's medical condition. (SSUF ¶ 21, ECF No. 56-2.) Under these circumstances, no reasonable juror could find that defendant sadistically and maliciously ankle-cuffed plaintiff and grabbed his waist chain "for the very

purpose of causing harm." Whitley, 475 U.S. at 320-21.

Even so, defendant is also entitled to summary judgment on qualified immunity grounds. In the Eighth Amendment excessive force context, the law is clearly established; however, an individual defendant officer is nonetheless entitled to qualified immunity if "a reasonable officer could have believed his conduct" amounted to "a good faith effort to [maintain] order, and thus [was] lawful." Marquez v. Gutierrez, 322 F.3d 689, 692-93 (9th Cir. 2003). In this case, viewing the facts in the light most favorable to plaintiff, the undersigned cannot say that a reasonable officer in defendant's position necessarily would have believed he was acting unlawfully in applying ankle cuffs and grabbing plaintiff's waist chain. See al-Kidd, 131 S. Ct. at 2085 ("When properly applied, [qualified immunity] protects 'all but the plainly incompetent or those who knowingly violate the law.'"). As discussed above, the undisputed record established a reasonable transport officer in defendant's position would not have had access to plaintiff's medical file or commitment offense, (SSUF ¶ 21, ECF No. 56-2), and the use of ankle restraints and waist chains conforms to constitutionally permissible procedures in transport. See Spain, 600 F.2d at 197-98. Thus, defendant is entitled to qualified immunity.

In sum, the undersigned finds that defendant is entitled to judgment as a matter of law on plaintiff's excessive force claim for damages against defendant in his individual capacity, see Whitley, 475 U.S. 312 at 322 ("Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain . . . , the case should not go to the jury."), and recommends this portion of defendant's motion be granted.

B. Excessive Force Claim for Damages Against Defendant in His Official Capacity

Defendant moves for summary judgment on plaintiff's excessive force damages claim asserted against him in his official capacity because "Officer Gore is immune to suit for damages in his official capacity." (Mot. Summ. J. 10:13-15.) Under the doctrine of sovereign immunity, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). Thus, the suit against defendant in his official capacity is a suit against his office, i.e., the

13

1  California Department of Corrections and Rehabilitation (CDCR).

2  "The Eleventh Amendment bars . . . suits [against state agencies or 'arms' of the state]
3  unless the State has waived its immunity," id. at 66, and California has not. Dittman v.
4  California, 191 F.3d 1020, 1026 (9th Cir. 1999). Moreover, the Ninth Circuit has specifically
5  held that California's CDCR is an arm of the state, entitled to Eleventh Amendment sovereign
6  immunity. Brown v. Cal. Dep't of Corr., 554 F.3d 747, 752 (9th Cir. 2009) ("The district court
7  correctly held that the California Department of Corrections . . . w[as] entitled to Eleventh
8  Amendment immunity."). Since plaintiff's claim is a claim against CDCR, and CDCR is entitled
9  to immunity from suit for damages, the undersigned finds that defendant is entitled to sovereign
10 immunity and recommends that this portion of his motion for summary judgment be granted.

   C.  Excessive Force Claim for Prospective Injunctive Relief

12  Defendant also moves for summary judgment on plaintiff's claims for prospective
13 injunctive relief. In his complaint, plaintiff asks that "the court . . . recommend retraining
14 CDC[R] transportation guards dealing with disable[d] inmates of all types[,] and training on
15 dealing with medical emergenc[ies] such as [his]." (Compl. ECF No. 1, at 3.) Defendant argues
16 plaintiff is not entitled to prospective relief "[b]ecause plaintiff is no longer incarcerated, his
17 claims regarding the CDCR . . . do not involve any ongoing or prospective violations of his
18 constitutional rights," and "plaintiff has no standing to request relief on behalf of other persons."
19 (Mot. Summ. J. 11:12-19.) The court agrees.

20  The Prison Litigation Reform Act provides: "Prospective relief in any civil action with
21 respect to prison conditions shall extend no further than necessary to correct the violation of the
22 Federal right of a particular plaintiff or plaintiffs." 18 U.S.C. § 3626(a). Moreover, the Supreme
23 Court has held that "[a]bsent a sufficient likelihood that [a particular plaintiff] will again be
24 wronged in a similar way," if a plaintiff "is no more entitled to an injunction than any other
25 citizen," then "a federal court may not entertain a claim by any or all citizens who no more than
26 assert that certain practices of law enforcement officers are unconstitutional." City of Los
27 Angeles v. Lyons, 461 U.S. 95, 111 (1983). "[P]ast exposure to [allegedly] illegal conduct does
28 not in itself show a present case or controversy regarding injunctive relief if unaccompanied by

any continuing, present adverse effects." Id. at 102 (alteration omitted) (quoting O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974)).

In this case, since plaintiff is no longer incarcerated, plaintiff has not shown a sufficient likelihood that he "will again be wronged in a similar way." Lyons, 461 U.S. at 111. Accordingly, plaintiff "has failed to demonstrate a case or controversy with the [CDCR] that would justify the equitable relief sought." Id. at 105.  Therefore, the undersigned finds that plaintiff's claim for prospective relief does not involve an ongoing violation of his constitutional rights, and recommends that this portion of defendant's motion for summary judgment be granted.

V. Conclusion

Accordingly, IT IS HEREBY RECOMMENDED that defendant's motion for summary judgment (ECF No. 56) be granted, and that the action be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case.  See Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  September 16, 2013

_/s/ Carolyn K. Delaney_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

GP
Pete3267.MSJ